FILED'08 AUG 04 14:41 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LAMAR HOWARD JEFFRIES, | ) | Civil No. 05-1851-JO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| SNAKE RIVER CORRECTIONS - OREGON; ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

Lamar Howard Jeffries
No. 10426861
SNAKE RIVER CORRECTIONAL INSTITUTION - LEGAL MAIL
777 Stanton Boulevard
Ontario, OR  97914

   Plaintiff Pro Se

Jacqueline Sadker
DEPARTMENT OF JUSTICE
1162 Court Street N.E.
Salem, OR  97301

   Attorney for Defendants

JONES, Judge:

## INTRODUCTION

Plaintiff, Lamar Howard Jeffries, is an inmate in custody of the Oregon Department of Corrections ("ODOC"), housed in the Snake River Correctional Institution ("SRCI") in Ontario, Oregon. Jeffries, who is proceeding *pro se,* filed this civil rights action under 42 U.S.C. § 1983 against defendants, a number of current and former ODOC employees, seeking both monetary damages and injunctive relief. As a result of an earlier dispositive ruling on defendant's motion to dismiss (see February 13, 2006, Order (# 10)), the only claim remaining in this case alleges First Amendment violations involving the plaintiff's right to receive mail. (Complaint (# 2) at 10.) Plaintiff and defendants filed cross-motions for summary judgment on this remaining claim. For the reasons stated below, defendants' motion (# 89) is granted, and plaintiff's motion (#97) is denied.

## I. FACTUAL BACKGROUND

Jeffries sues five current and former employees of ODOC: Judy Gilmore, Cynthia Cain, Kathy Stevens, Sandra Fetter, and Lynn Hust. The crux of Jeffries' complaint is that the defendants violated his First Amendment rights through their implementation of the ODOC mail rules and the SRCI mail tracking system. He generally alleges that defendants denied him his mail and failed to notify him when his incoming mail was returned to sender. (Complaint at 11.)

ODOC mail rules govern the means by which incoming inmate mail is processed, and all incoming mail at SRCI is inspected to ensure that does not violate these rules. Or. Admin. R. ("OAR") 291-131-0015(6) (2008). First, the mail is inspected for structural or "noticeable" violations, such as having an incomplete return address, lacking information sufficient to identify

2 - OPINION AND ORDER

the intended recipient (such as the inmate's prison identification number), or having unauthorized adhesives or stickers on the outside of the envelope. OAR 291-131-0015(6); 291-131-0025(1); 291-131-0037(5)(b). Incoming mail is checked for noticeable violations before it is accepted into SRCI for opening and inspection, and all mail with noticeable violations is returned to sender via the United States Postal Service ("USPS") with a sticker notifying the sender of the violation. However, inmates are not notified when their incoming mail is returned to sender for a noticeable violation.

Once the incoming mail passes inspection for noticeable violations, it is received into SRCI for opening and further inspection. Any opened mail that does not conform with ODOC mail rules is again returned to the sender via USPS, but both the sender and the intended inmate recipient are given notice of the mail violation. OAR 291-131-0037(6)(a).

On June 23, 2005, Jeffries used the ODOC Grievance System to pursue his First Amendment claim regarding the prison's handling of the mail sent to him by Susan Hartman. Specifically, he was concerned that he did not receive two letters sent by Ms. Hartman; that he received only one rejection notice; and that those letters were not returned to Ms. Hartman per ODOC rules. When Ms. Hartman eventually received the correspondence that had been returned to her, Jeffries changed his grievance, alleging that SRCI took over thirty days to return the letters.

SRCI uses an inmate mail tracking system, which is not required by ODOC mail rules, to assist inmates in tracking their mail. (Defs.' Ex. 101, Attach. 1, ¶ 14.) In August of 2005, after receiving Jeffries' grievance, defendant Stevens changed the tracking system to include noticeable violations. (Id. at ¶ 15.) Currently, the system provides inmates with a tracking sheet

3 - OPINION AND ORDER

displaying the date on which mail is received or rejected, a brief description of the item mailed, and the sender's last name. (Defs.' Ex. 101, Attach. 5; Pl.'s Mot. for Summ. J., Attach. 11, Decl. of Kathy Stevens, ¶ 9.) Jeffries' § 1983 claim challenges the constitutional validity of the ODOC mail rules as applied to the manner in which his mail was handled. Specifically, he challenges the ODOC practices of prohibiting adhesives, failing to provide notice when mail is rejected for noticeable violations, and causing delay in returning mail to the sender.

## II. STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.E. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

4 - OPINION AND ORDER

## III. PRELIMINARY MATTERS

A.   **Sufficiency of Plaintiff's Concise Statement of Material Facts**

Defendants assert that Defendants' Concise Statement of Material Facts (# 91) must be admitted as true because plaintiff failed to contest the facts as required by Local Rule 56.1(f). This contention is incorrect. In a civil rights case involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992), overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1998); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). Accordingly, this court construes Plaintiff's Concise Statement of Material Fact (# 99) as sufficient to satisfy the requirements of LR 56.1(f).

B.   **Qualified Immunity**

Defendants further contend that they are entitled to qualified immunity. Qualified immunity is immunity only from suit for damages; it does not provide immunity from a suit for declaratory or injunctive relief. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993); see also Wood v. Strickland, 420 U.S. 308, 314 (1975) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."). Because plaintiff in this case is seeking both damages and injunctive relief, qualified immunity is not a complete bar to this action.

C.   **Plaintiff's Additional Claims**

Plaintiff's Response Memorandum (# 97) attempts to include several claims for relief that were either not included in his original complaint or were dismissed at an earlier stage of this litigation. In his response, plaintiff alleges that, among other things, defendants violated his

5 - OPINION AND ORDER

rights by: 1) using mail rule OAR 291-131-0035 in an overbroad manner in order to censor his mail; 2) failing to track mail all the way to the living units; 3) denying him mail from Debbie Heise, Letty Gonzales, Angie Mettie, Angel Atkinson, and various John and Jane Does; 4) incinerating or shredding "large volumes" of his incoming mail rejected for noticeable violations; 5) using mail acronyms in mail history that obfuscates the identity of the sender; and 6) obstructing legal mail. Plaintiff also added the allegation that defendants participated in a conspiracy to violate his rights in these ways. Plaintiff did not move to file an amended complaint, and this court will not construe claims asserted in a responsive memorandum as sufficient to satisfy the requirements of Fed. R. Civ. P. 15.

Furthermore, all of the claims listed above have either been dismissed at an earlier stage of this litigation, or are substantively barred by the Prison Litigation Reform Act for failure to exhaust available administrative remedies. As discussed below, plaintiff has properly alleged only three claims based on his First Amendment right to send and receive mail.

## IV. FIRST AMENDMENT CLAIMS

To state a claim under 42 U.S.C. §1983, plaintiff must assert that persons, acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or federal law. American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir.), cert. denied, 522 U.S. 996 (1997). Plaintiff claims that defendants, while employed at SRCI, deprived him of his First Amendment rights by: 1) failing to provide him with notice when incoming mail with noticeable violations was returned to the sender; 2) intercepting and returning to sender mail which contained unauthorized adhesives; and 3) causing undue delay when returning rejected mail to the sender.

6 - OPINION AND ORDER

Defendants contend that the mail handling practices at SRCI did not violate plaintiff's First Amendment rights. The United States Constitution permits greater restriction of prisoners' First Amendment rights than it allows elsewhere, and affords substantial deference to the judgment of prison administrators. See Beard v. Banks, 548 U.S. 521, 126 S.Ct. 2572, 2577-78 (2006) (upholding a prison policy that denies violent inmates confined in long-term restrictive housing access to newspapers, magazines, and photographs) (citations omitted). Inmates have a First Amendment right both to send and receive mail, see Thornburgh v. Abbott, 490 U.S. 401 (1989), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband. See Wolf v. McDonald 418 U.S. 539, 576-77 (1974). Prison administrators can also impose burdens on the senders of incoming inmate mail, such as requiring them to include their full name and complete return address on the outside of all prisoner correspondence. Morrison v. Hall, 261 F.3d 896, 906 (9th Cir. 2001).

However, the Supreme Court has repeatedly recognized that restrictions on the delivery of mail burden an inmate's ability to exercise his or her First Amendment rights. See generally Thornburgh, 490 U.S. 401; Procunier v. Martinez, 416 U.S. 396 (1974), *overruled on other grounds by* Thornburgh, 490 U.S. at 413-14. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner Court set forth several factors for determining the reasonableness of the regulation at issue: (1) there must be a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) the court should determine whether the challenged regulation results in prison inmates having no alternative means of exercising the right; (3) the court is to consider the

7 - OPINION AND ORDER

impact that accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources; and (4) the court should assess whether there are ready alternatives to the prison regulation—the absence of such ready alternatives suggests that the regulation is reasonable, while their existence may be evidence of the opposite. Turner, 490 U.S. at 90-91 (internal citations omitted). When reviewing challenged regulations, federal courts perform the analysis with deference to the expertise of state prison officials. Id. at 84-85. However, prison authorities cannot rely merely on general or conclusory assertions to support their policies. Walker, 917 F.2d at 386.

A.    **Screening for Noticeable Violations**

The state government has a legitimate penological interest in preventing narcotics, such as LSD, from coming in to SRCI.. This interest is rationally served by prohibiting mail containing adhesives and stickers, which can facilitate the transmission of narcotics. (Defs.' Ex. 101, Stevens Aff. ¶ 7.) Furthermore, prohibiting stickers and adhesives on incoming mail does not deprive prisoners of their right to send and receive mail; rather, inmates can still receive mail that is free from contraband adhesives, and senders have the opportunity to resend their letters after correcting the identified violations. Allowing adhesives and stickers to be introduced into the prison would result in adverse effects on guards, other inmates, and prison resources generally, because it would enable inmates to receive mail containing contraband such as narcotics.

Plaintiff has not provided an alternative to the current regulation other than to suggest that ODOC should simply allow mail containing unauthorized stickers and adhesives to be delivered to inmates without interference. I do not find this alternative to be reasonable. Because an

8 - OPINION AND ORDER

examination of all four Turner factors favors the defendants, I conclude that the ODOC's policy of screening inmates' mail and prohibiting incoming mail containing stickers or certain adhesives does not violate plaintiff's First Amendment right to receive mail.

### B.  Failure to Provide Inmates with Notice of Rejected Mail

Plaintiff further alleges that defendants violated his constitutional rights by failing to provide him with notice when rejecting his incoming mail for noticeable violations. After receiving his complaint, defendant Kathy Stevens and other SRCI employees took the initiative to include "noticeable violations" in the prisoner mail tracking system. (Ex. 101, Stevens Aff, ¶ 15.) However, as plaintiff complains, the upgraded system still does not track the names or addresses of the senders whose incoming letters are rejected for noticeable violations, which may have caused plaintiff to lose potential pen pals because he was unable to respond to these correspondents. (Defs.' Ex. 101, Attachment 3.)

Although plaintiff's frustration with SRCI's handling of noticeable violations is understandable, it is questionable whether an inmate even has a First Amendment right to be given notice when his mail is rejected for such violations. As defendants point out, SRCI's practice of returning mail to the sender without notice to the intended recipient is almost identical to the widely accepted U.S. Postal Service practice of not providing notice to intended recipients when ordinary mail is returned for lack of postage or some other technical deficiency. However, assuming for the sake of argument that the Turner analysis applies in this instance, the prison's policy of not notifying inmates about mail that has been returned to the sender for a noticeable violation is constitutional. There is a valid and rational connection between this regulation and the government's interests in facility security, safety, health, order and discipline, and inmate

9 - OPINION AND ORDER

rehabilitation. (Defs.' Ex. 101, Attach. 4, OAR 231-131-0005(3).) SRCI receives over 143,000 pieces of mail in a 21-day period, all of which must be inspected before it enters the institution. (Defs.' Ex. 101, Stevens Aff. ¶ 17.) Providing notice to each inmate recipient for each letter with a noticeable violation would drain already limited resources from security screening of mail that actually enters the institution, heightening chances that contraband may inadvertently be allowed into the prison. Id.

The remaining three Turner factors also weigh in favor of defendants. Despite the lack of notice, plaintiff would still have access to this mail once the sender corrects any deficiencies and re-sends the letter. Given the large volume of mail directed to prison inmates, requiring that notice be given for each letter with a noticeable violation would create a significant administrative burden for the prison mail staff.

Finally, although SRCI has been able to provide some limited means for prisoners to track noticeable violations, the prison's current accommodation falls far short of the detailed notices to which plaintiff claims he is entitled. Plaintiff asserts that the SRCI staff should provide him with the name and address of each sender whose mail was rejected; an accommodation that would, at best, further drain the prison's limited mail processing resources and, at worst, be impossible (such as when the reason for the rejection is the sender's failure to include a return address). There are no ready alternatives to the policy of automatically rejecting noticeable violations, other than the tracking system that SRCI has already implemented. Because SRCI's policy of not providing inmates with detailed notice every time a piece of mail is rejected for having a noticeable violation satisfies the Turner requirements, I conclude that it does not violate the First Amendment.

10 - OPINION AND ORDER

C.   **Delay in Returning Mail to Sender**

Regarding plaintiff's final claim that his First Amendment right to send and receive mail was violated by alleged delays in returning Susan Hartman's rejected mail, I find that plaintiff has not established that any unreasonable delay was caused by defendants' actions or by SRCI's mail handling practices in general, as opposed to those of the U.S. Postal Service. Although plaintiff provided some evidence that the mail in question was not returned to Ms. Hartman until "approximately three weeks after being sent" (Pl.'s Mot. for Summ. J., Attach. 2, Decl. of Susan Hartman, ¶ 4), there was no evidence tending to show that the defendants were any more responsible for this delay than employees of the U.S. Postal Service. Accordingly, plaintiff's claim fails as a matter of law.

## CONCLUSION

The uncontested material facts in the record establish that the defendants did not deprive plaintiff of his First Amendment rights to send and receive mail. For the reasons stated above, plaintiff's motion for summary judgment (# 97) is DENIED, and defendants' motion for summary judgment (#89) is GRANTED.[1] Plaintiff's claims against all defendants are hereby DISMISSED WITH PREJUDICE, and any pending motions are DENIED AS MOOT.

IT IS SO ORDERED.

DATED this 4th day of August, 2008.

ROBERT E. JONES
U.S. District Judge

---

[1] Because plaintiff is not the prevailing party, he is not entitled to prevailing party fees. Therefore, plaintiff's motion for costs (# 109) in the amount of $1,081,145.00 is DENIED.

11 - OPINION AND ORDER